UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**ALAMO GROUP, INC.,**

    **Plaintiff,**

    v.

**FECON, INC.,**

    **Defendant.**

Case No. 1:17-cv-820
JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

Fecon, Inc., the defendant in this patent infringement action, prevailed at summary judgment on its noninfringement theory. Having succeeded on defense, Fecon now seeks to seize the offensive. It moves this Court for an Order determining that this is an "exceptional case" under 35 U.S.C. § 285, and requests that the Court award Fecon the roughly $1.5 million in attorneys' fees that it claims it expended in defending itself. (Doc. 116). For the reasons discussed more fully below, the Court **DENIES** Fecon's motion.

## BACKGROUND

The Court's recent decision awarding Fecon summary judgment outlines the underlying facts in this matter in detail. (*See* Op. & Order, Doc. 111). The Court declines to repeat that account here. For present purposes, it suffices to say that the plaintiff, now Alamo Group Inc.,[1] holds the rights to U.S. Pat. No. 6,764,035 (the "'035

---

[1] A different company, Denis Cimaf, Inc., was the original named plaintiff in this matter. On January 28, 2021, though, Cimaf filed an unopposed Motion to Substitute Plaintiff (Doc. 105), in which Cimaf informed the Court that Cimaf had assigned its interest in the patent-in-suit

Patent"), which is directed at an invention relating to an industrial brush cutter that has protective rings that guard the mounting blocks on which the cutting teeth are mounted. Fecon makes brush cutters with protective rings in front of the mounting blocks. Alamo claimed that Fecon's brush cutters infringe the '035 Patent, and in particular, independent claim 20 of that patent (along with two dependent claims).

Although Alamo had some early success in the litigation, particularly at the claim construction phase, the Court ultimately concluded that the undisputed facts showed that Fecon's accused infringing devices did not meet two limitations set forth in claim 20. Specifically, the Court found that Alamo failed to present any evidence showing either (1) that the accused infringing devices have a guard that is "at least equal to the height of the block," or (2) that those devices include a protective guard "preventing the block from being struck," each of which claim 20 requires. (*Id.* at #8528). Accordingly, the Court granted Fecon summary judgment on noninfringement grounds. Alamo elected not to appeal that determination.

Apparently buoyed by its success on summary judgment, Fecon now moves for a declaration that this is an "exceptional case" under 35 U.S.C. § 285. That statute provides, in its entirety, that: "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." Fecon contends that this action is exceptional due to: (1) the lack of pre-suit investigation; (2) the continued pursuit of claims clearly known to be meritless; (3) the constantly changing, "shifting sands," infringement

---

to Alamo Group, Inc. The Court granted that motion on February 1, 2021. Since that time, Alamo has been the plaintiff in this action.

theories; (4) litigation misconduct; and (5) the Plaintiff's allegedly improper motive in pursuing the suit. (*See* Fecon Mot. for Attorneys' Fees, Doc. 116, #8679–95).

Alamo, not surprisingly, urges the Court to deny Fecon's motion. According to Alamo, this was a run-of-the-mill patent matter. Alamo acknowledges that it lost, but claims that it pursued a reasonable case, and did so in a reasonable manner, based on a reasonable motive. Separately, Alamo asserts that, even if the Court were inclined to declare the case exceptional, the attorneys' fees that Fecon seeks are not reasonable.

The matter is now fully briefed and before the Court.

## LAW AND ANALYSIS

All parties agree on the starting point. Under the so-called "American rule," each party typically bears its own attorneys' fees. But both parties also acknowledge that there are exceptions to that rule, including the statute at issue here, 35 U.S.C. § 285. They likewise agree that this statute allows fee shifting if the Court determines that a given patent infringement case is "exceptional," in which case the Court can award "reasonable attorney fees." *Id*. But the parties part company in their respective assessments as to (1) whether the case is exceptional, and (2) whether the requested fees are reasonable. The Court's determination on the first issue, however, obviates any need to address the second.

To use the Supreme Court's formulation, an exceptional case is "one that stands out from others with respect to the substantive strength of a party's litigation position (considering both the governing law and the facts of the case) or the

unreasonable manner in which the case is litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). The designation is not intended to punish a party for losing, but rather only to prevent the prevailing party from "suffering a gross injustice." *Munchkin, Inc. v. Luv n' Care, Ltd.*, 960 F.3d 1373, 1378 (Fed. Cir. 2020). In sum, a court should not approach the exceptional case designation under § 285 lightly, lest this exception to the American Rule swallow the rule itself.

"There is no precise rule or formula" for identifying an exceptional case. *Octane Fitness*, 572 U.S. at 554. Rather courts are directed to make that determination "in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id*. Both parties agree that the factors relevant to this inquiry include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." (Fecon Mot. for Attorneys' Fees, Doc. 116, #8679 (quoting *Octane Fitness*, 572 U.S. at 554 n.6); Alamo Opp'n., Doc. 119, #8841 (same)). And the parties also agree that "[i]t is the substantive strength of a party's litigating position that is relevant to the exceptional case determination, not the correctness or eventual success of that position" that matters for exceptional-case purposes. (Fecon Mot. for Attorneys' Fees, Doc. 116, #8679 (quoting *SFA Sys., LLC v. Newegg, Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015), in turn quoting *Octane Fitness*, 572 U.S. at 554); Alamo Opp'n., Doc. 119, #8841 (same)).

While the parties agree on the factors that guide the analysis, they disagree on their application here. For its part, Fecon identifies the five issues noted above that

4

it believes support an exceptional case finding: (1) the lack of pre-suit investigation; (2) the continued pursuit of claims clearly known to be meritless; (3) the constantly changing, "shifting sands," infringement theories; (4) litigation misconduct; and (5) improper motive. Alamo helpfully organizes its response according to those same five topics. Thus, the Court will follow suit and discuss each of them in turn.

### A. Pre-Suit Investigation.

Fecon correctly notes that case law suggests that a "patent holder, if challenged, must be prepared to demonstrate both to the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement." *Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, 112 F. Supp. 3d 888, 896–97 (D. Minn. 2015). But, as Alamo observes, a reasonable pre-filing inquiry "can simply consist of a good faith, informed comparison of the claims of a patent against the accused subject matter." *QPharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1302 (Fed. Cir. 2004).

Here, the record shows that one of the two named inventors on the '035 Patent, Mr. Denis of Denis Cimaf, Inc. (the original plaintiff in this matter), physically inspected one of the accused infringing devices (the only one then available) at a trade show long before initiating suit. Not only that, but he also had follow-up communications with Fecon, in which he sought additional information about the products. Cimaf personnel also inspected Fecon's growing product lines at subsequent trade shows.

5

In fairness to Alamo, the Fecon products did include many aspects of the patented invention, including an element that corresponded to a key aspect of the claimed invention. According to the description of the prior art in the '035 Patent, before the invention claimed in the patent, most brush-cutting devices had unprotected cutting teeth mounted on the cylindrical body of the cutting device. Those teeth and the blocks on which they were mounted, being unprotected, were subject to large forces if the rapidly rotating cylinder hit a hard, non-cuttable material, such as a large rock. The innovation set forth in the patent, then, was to provide a "protective means" in front of the teeth to prevent the mounting blocks (on which the teeth were mounted) from experiencing that impact force. ('035 Patent, Doc. 1-1, #11). The patent explains that this protective means "preferably comprise rings encircling the cylindrical support base, a ring aligned with each block and of a height at least equal to the height of the block but lower than the height of the cutting section of the tooth on the block." (*Id.*).

Here, no one disputes that Mr. Denis' investigation would have revealed that the Fecon products had guards in the form of rings encircling the cylindrical brush cutter body, with one such ring aligned with each mounting block. Thus, the dispute between the parties here largely came down to (1) the height issue, i.e., whether the protective means were "of a height at least equal to the height of the block but less than the height of the cutting edge from the surface," (*id.* at #15), and (2) whether the protective rings "prevented" the mounting blocks from being struck, (*id.*).

6

The parties have since spilled considerable ink on how these respective heights should be measured and what "preventing" means (topics to which the Court returns below). But the Court cannot say that it was objectively unreasonable for Cimaf (now Alamo) to have concluded, based on its pre-suit inspection, that it would be able to show that the Fecon products were employing the claimed invention. If brush cutters typically did not offer protection for mounting blocks, at least not in the form of rings around the cylinder in front of the blocks, then Fecon's brush cutters were certainly at least in the realm of the claimed invention, even if they did not practice one or two of the specific claim elements. Indeed, if the protective rings were an innovation not included in other products, then Cimaf (the then-plaintiff) may well have concluded that even if it could not show literal infringement, it would still be able to establish infringement under the doctrine of equivalents. Accordingly, the Court does not agree with Fecon that the nature of the pre-suit investigation favors a finding of an exceptional case here.

**B.  Alamo's Continued Pursuit Of Its Claims Through Summary Judgment.**

On a related note, Fecon next contends that, not only did Alamo fail to sufficiently investigate, but that Alamo also failed to stop litigating once it was clear that its infringement claims were doomed. (*See* Fecon Mot. for Attorneys' Fees, Doc. 116, #8681–84). Once again, the Court does not agree.

As noted above, at the end of the day, this case largely came down to whether Alamo could establish that the height of the protective means was at least equal to the height of the mounting block, but less than the height of the cutting tooth.

7

Moreover, there was little dispute here that the cutting tooth extended beyond the height of the protective ring (as otherwise no, or very little, cutting would occur). Thus, the whole case really came down to how to measure the "height of the block" and the "height" of the protective means (here, the rings).[2]

Answering the height question was not a straightforward inquiry. Both mounting blocks and protective rings can, and here did, have non-uniform shapes. Accordingly, the heights of those elements could (and did here) vary, depending on where they were measured. Throughout the suit, then, much turned on exactly where on the mounting blocks, and where on the protective rings, the measurements would occur.

The parties of course had differing views on that issue. And it is hard to say that Alamo's view on that subject was objectively unreasonable, or at least so unreasonable as to render this case "exceptional." Indeed, Alamo largely won the claim construction battle regarding where the measurement should occur.

The problem for Alamo, as the Court noted in its opinion on summary judgment, was that even in adopting Alamo's view on *where* the measurement should occur, the claim construction led to some additional ambiguity in terms of exactly *how* to perform the measurement. Once again, Alamo had one view on that matter; Fecon had another. At summary judgment, the Court agreed with Fecon, but that is not to say that Alamo was objectively unreasonable in pursuing its argument on the "how"

---

[2] As noted above, the "preventing" limitation was also somewhat at issue, but that was tied in many ways to the height issue, as devices that met the height restrictions (depending on how those restrictions were understood) likewise would have also met the preventing limitation.

8

issue. Stated alternatively, given the ambiguity remaining after the Claim Construction Order on that topic, the argument that Alamo pursued seems a reasonable interpretation of that Order. To be sure, the Court had problems with Alamo's interpretation, as Alamo's method of measurement did not align with the patent's underlying purpose. Using Alamo's method, mounting blocks could meet the height limitation even if portions of the blocks extended far above the protective rings, which seemed inconsistent with the claimed benefit of the patent—protecting the mounting blocks from excessive forces. But while not a *convincing* interpretation, given the ambiguity in the Claim Construction Order, it was not a frivolous argument, either.

Separately, to the extent that the Court noted in its summary judgment opinion that the Claim Construction Order was perhaps mistaken in how it construed the height element, that does not support a finding of an exceptional case. A party can hardly be faulted for relying on the Court's claim construction, even if the Court itself later revisits that issue.

Nor is Fecon correct to suggest that Alamo lacked any theory of infringement. To be sure, as noted, Alamo could succeed only if the Court accepted Alamo's view that the "height of the block" actually referred to the "height of the mounting bolt" (each block has a bolt for mounting the tooth on the block). But, while the Court did not find that interpretation convincing, nothing about Alamo's argument struck the Court as objectively unreasonable or offered in bad faith. True, granting summary judgment necessarily means that the Court found the facts unequivocally favored one

9

side. But it is important not to conflate the summary judgment standard with the standard for an "exceptional case"—otherwise every case in which a court grants summary judgment would also entail fee shifting. There is no suggestion, either in statutory language, or case law, that this would be an appropriate result.

In sum, while the Court rejected Alamo's argument about the height limitation, the Court declines to find that Alamo's position was "so devoid of substance that it renders this case extraordinary for purposes of assigning attorney fees." *Hytera Commc'ns Corp., Ltd. v. Motorola Sols., Inc.*, No. 1:17-cv-1794, 2021 WL 1698693, at *2 (N.D. Ohio Apr. 29, 2021); *see also Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1180 (Fed. Cir. 2018) ("A strong or even correct litigating position is not the standard by which we assess exceptionality.").

## C. Alamo's "Changing" Litigation Positions.

As further evidence that Alamo allegedly pursued meritless claims, Fecon asserts that Alamo constantly changed its infringement positions throughout the course of the litigation. (*See* Fecon Mot. for Attorneys' Fees, Doc. 116, #8684–86). Fecon argues that this constituted litigation misconduct because these "shifting sands" both extended the litigation beyond the point when it should have ended, and also forced Fecon to expend fees rebutting these new arguments. (*Id.*). This combination, Fecon says, renders the case exceptional.

Again, this argument principally centers on the parties' disagreement regarding how the heights specified in the claim should be measured. And, to be fair, Alamo did perhaps maneuver a bit on this topic along the way. As Fecon changed the

mounting block design in later iterations of its products (perhaps in response to the concerns this litigation raised), Alamo adopted increasingly strained interpretations of how to measure the requisite heights, so that Alamo could continue to accuse these new products of infringing.

But, again, while the Claim Construction Order was generally clear on *where* the height of the mounting block should be measured, it left room regarding *how* that height should be measured (i.e., radially outward to the top of the block behind the mounting bolt, or rotationally backward from the mounting bolt to the rear of the block). And that ambiguity left room for legitimate debate.

As for the amendments to the infringement contentions, the other topic that Fecon raises, the Court agrees with Alamo that these were largely the result of Fecon introducing new products, or Alamo learning new details about how the existing products worked. Accordingly, the Court does not find that the amendments reflect litigation misconduct. Thus, this factor does not weigh in favor of labeling this case exceptional.

**D.     Alleged Litigation Misconduct.**

In addition to its complaints regarding Alamo's shifting infringement contentions, Fecon also accuses Alamo of other litigation misconduct. This takes the form of (1) alleged misrepresentations of the record; (2) filings Alamo knew it could not win or that served no purpose; (3) Alamo's pursuit of "unnecessary discovery"; and (4) Alamo's violation of its NDA with Fecon. (*See* Fecon Mot. for Attorneys' Fees, Doc. 116, #8686–91).

As to the first of those, Fecon basically asserts that Alamo misrepresented the record at the argument on summary judgment. (*See id.* at #8687–88). On that front, while the Court disagreed with some of Alamo's characterizations of the record evidence, the Court stops short of finding that Alamo made "misrepresentations." To be sure, Alamo vigorously argued on its client's behalf, including in how it characterized some aspects of the record evidence. And, as Fecon noted, the Court found that some of those arguments (and characterizations) missed the mark. But Alamo pressed its arguments in a coherent and understandable fashion, and it pointed the Court to the parts of the record that it claimed supported its position. The Court ultimately disagreed, of course, but that matters little in terms of finding the case exceptional. The nature of litigation generally—at least litigation that carries through to final judgment—is that there typically will be a winning party and a losing party. Here, Alamo lost, but the point of an exceptional case finding is not to punish a party for advancing a position that ultimately loses.

As for filings that "served no purpose," Fecon principally points to Alamo's summary judgment motion. (*Id.* at #8688). But that filing—a cross-motion for summary judgment—did not meaningfully change the work required, either by Fecon or by the Court. That is because that filing largely put at issue the very topics that Fecon raised in its own motion. That does not strike the Court as support for finding that this case was "exceptional."

The pursuit of "unnecessary discovery" appears to relate to one deposition that Fecon contends Alamo should not have taken. (*See id.*). One and a half million dollars

12

in attorneys' fees seems like a pretty steep price for one deposition. And it is not entirely clear from Fecon's description that the deposition was inappropriate. Fecon says that the deposition led only to one footnote in a motion. (*Id.*). But some depositions do not even get that much airtime in a case, and the Court hesitates to adopt a rule of "you must cite every deposition at least once to avoid an exceptional case determination," as such a rule would likely lead to parties larding their filings with unnecessary deposition citations, just to prove that they "used" each deposition. Thus, without a greater showing as to that deposition's impropriety, the Court declines to rely on it as a basis for finding this to be an exceptional case.

The NDA issue likewise falls short. It appears, based on Fecon's telling, that Alamo could have been more careful with some of the material that the parties exchanged in this case. (*Id.* at #8688–89). And, if Fecon suffered harm as a result of any wrongful disclosures, it could perhaps file a breach of contract claim. But again, shifting fees in this action based on alleged sporadic violations of the NDA, with no proof offered that Fecon suffered any damages as a result, strikes the Court as a "punishment" that would not fit the alleged "crime."

### E. The Alleged Improper Motive.

Finally, Fecon claims that Alamo had an improper motive in filing this action. (*Id.* at #8691). Its proof? Fecon argues that the potential damages at issue here did not warrant the expenditure of attorneys' fees that litigating the case would require. Thus, Fecon says, the actual motive must have been a wrongful attempt to impede Fecon from competing in the market. (*Id.*). As further proof of this argument, Fecon

13

offers to make its damages calculations available to the Court on an in camera basis. (*Id.* at n.8).

Comparing estimated damages to attorneys' fees, without more, strikes the Court as a tenuous basis for making an exceptional case finding. Parties pursue (or defend) patent litigation for a variety of reasons. For example, perhaps a patentee wants to make "as example" of one infringer, in an effort to get others to fall in line. Or perhaps a patentee believes that an accused infringer will settle early when the infringer sees how strong the case is, and then is "trapped" into pursuing the matter, once started, to judgment. Or perhaps the patentee believes it will be able to show willful infringement, and thus collect enhanced damages or attorneys' fees itself. Or perhaps the value of the patentee's company is strongly tied to the validity of one or more patents, such that defending that validity is a bet-the-company proposition.

The Court is not saying that any of these possible motives reflect the situation here. The Court does not know. Rather, the point is merely that a mechanical comparison of estimated damages to attorneys' fees, without more explanation of context (which is essentially all that Fecon offers here), does little to convince the Court that a party has a bad motive in instituting suit.

## CONCLUSION

Without doubt, Alamo lost this suit. But the Court is not convinced that Fecon suffered a "gross injustice" in defending against it. *See Munchkin, Inc.*, 960 F.3d at 1378. Both parties were represented by capable counsel, who vigorously pressed their respective clients' interests based on the facts as they evolved. From what the Court

14

can tell, counsel on both sides did so in a reasonable and professional manner. The Court is not inclined to find that this is an exceptional case.

For the above reasons, this Court **DENIES** Fecon's Motion for Attorneys' Fees (Doc. 116).

**SO ORDERED.**

August 17, 2021
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**